and then take a brief recess before completing the docket. We begin with League of United Latin American Citizens v. Abbott. Ms. Mouser. Good morning. May it please the court. The District Court, in granting the state's motion to dismiss, primarily relied on two summary affirmants, one by this court in Hitson v. Baggett and one by the Supreme Court in Williams v. Virginia Board of Elections. For a summary affirmance to be controlling, the relevant inquiry is not whether all three cases involve challenges to the winner-take-all implementation of the Electoral College. As the Supreme Court's explain in Mandel v. Bradley, the relevant inquiry is whether the precise issues presented in that case were necessarily decided or presented in this case. As I understand it, and I'm asking so that you can correct me if I've got it wrong, the theory that you advance here of unconstitutionality would, would, would knock out the scheme for choosing electors in all 51 jurisdictions. Is that right? We, this case just focuses on Texas. Yes, I know that, but I'm just, obviously we have to look at the impact of what we might. Correct. We, we have, we have filed four cases. We have filed two cases in red states by blue plaintiffs and two states, blue states by red plaintiffs. Is, is the answer to my question yes? If it goes to the Supreme Court, that's the likely outcome, yes. Well, I'm, I'm not talking about the outcome. I'm talking about if we adopt your rationale and express it as to Texas, but we say that you're completely right in your theory of unconstitutionality, then that if applied to all 51 jurisdictions would mean that the, that the scheme in all 51 is, is unconstitutional. Yeah, yes, Your Honor, that could be the outcome. And that would even include Nebraska and Maine. We have not brought cases, you know, they, they adopted different methodology for allocating their electors. I, I understand that. They would have to follow the same principles that this Court, they, I mean, they, they, they wouldn't necessarily be bound by a decision by this Court. I, I understand that. This relates to Texas, but the implications could be that it has nationwide impact. And what sort of scheme or plan within a state would meet constitutional muster for choosing, uh, electors, uh, under the present congressional scheme which has two senators and proportional number of representatives in each state? Well, the, the relief that we have requested is not for this Court to, um, determine. No, listen, listen to the question that I'm asking you. I'm, I'm asking you. There, there. Give us one or more examples of, of, uh, I call it schemes. I don't mean that disparagingly, but schemes or, or plans that would, uh, that would meet the constitutional requirements in your view. The Supreme Court has content, considered one alternate scheme before in 1892 in the case of McPherson v. Blacker where, um, single member districts were used as opposed to multi-member districts. And so that's one that the Supreme Court has considered before. You could have some proportional scheme where, um, you, candidates had to get at least a certain percentage of, um, of votes. So it wasn't so splintered to take into account third parties, but, you know, it could be 10% or something like that. And then proportional based on that. Those are two possibilities. How would that work with Texas with 36 congressional districts and, and two senators? How, how, how, how would that be implemented? You would look at what the popular vote was by the, the primary parties and you would then, um, allocate based, proportionally based on the popular vote. Using, using 36 as the denominator? Right. Or using 38 as the denominator? Right. Which one? I mean, what, what? You would use the number of electoral votes that Texas now has. Which is 38 including the senators? Yes. So it would not be by congressional district. All right. What, what other, uh, cases similar to this are pending, uh, in other parts of the country? What, what? I'm sorry, Your Honor, can you repeat that? What other cases similar to the one you brought here is pending in other parts of the country? We have a case that has been argued in the First Circuit that has not yet been decided. We have a case that will be argued in the Ninth Circuit in March and a case in the Fourth Circuit. Did, did, did the plaintiffs get any relief in the district courts? Motions to dismiss, um, were granted in each of the district courts largely based on the First Circuit, which is the one up on appeal at the First Circuit. Correct. And she determined that Williams was binding precedent and also, uh, for similar reasons that's argued by counsel opposite that the three judges, that the, that Williams was binding, um, and then went into the court. So, I guess my question is, what arguments to us here are different in scope constitutionally than the ones that were presented to the district court in the First Circuit in which the First Circuit is pending their decision or said differently, but the, the arguments constitutionally the same in each of the cases. I know each state's different in terms of the numbers, but it's a constitutional challenge that you're presenting any different here than what you argued to Judge, uh, Saris, to which she granted the 12B6. I, I think they're similar. I would just like to spend a few minutes explaining why Williams is not controlling here. Okay, one of the problems that you have, you've already started with, that's listening to the question and answering the question, yes, as opposed to the argument. We're going to let you make your argument, but it's helpful if you at least answer the question and then move on. So, I was just asking you, were the arguments the same or similar? If that's a yes or no, if you can do that, then. I, I believe our arguments, um, are slightly different here. Um, here we. It's the same argument relative to Williams though, right? Not, not exactly, Your Honor. Okay, tell me how it differs. We, in, in the first, before Judge Saris, which is one of the first cases we argued, I believe in the, in the argument, the argument there very much focused on standing, and a standing argument was not made in this court. So, that was, that was the focus of that, that argument. I, I believe we did not, in that argument, the issue of intent was not addressed. Okay, not trying to confuse you. In that case, you argued that Williams was a summary affirmance by the Supreme Court, therefore not controllable. That's the same argument you make today, correct? Yes, Your Honor. Thus far, none of the courts have held that Williams' summary affirmance, though it may be, was not valid, is that right? Correct. Okay, Saris. In Williams, the, um, the district court concluded that NVIDIA's intent was required, but at that time, the district court did not have the precedent that we now have available today at identifying the factors that a court must consider in determining whether there was, in fact, NVIDIA's intent. Among the factors that a court needs to look at is the size of the district, the multi-district, and the percentage of members of that district that are elected through an at-large election. Cases such as Wickham v. Chavez and Rogers v. Lodge were decided after Williams and provide that guidance. In addition, at the time Williams was decided, the Supreme Court had not yet held that an at-large multi-member district was unconstitutional. The court first did that in the decision of Light v. Register. In addition— In White, they said that multi-member districts aren't per se unconstitutional, isn't that right? That's correct, Your Honor. You need to look at the degree—in Rogers v. Lodge, the court said you have to look at the degree of proportion. And also, the court in Rogers v. Lodge explained that intent does not just focus on the reason for adoption. You also have to look at the focus on why the multi-member election is being maintained. And you can determine that not only based on direct evidence, but circumstantial evidence as to why it's being maintained. Here in our complaint, we allege the precise factors that Wickham v. Chavez and Rogers v. At-Large election is unconstitutionally dilutive and whether it's indicative of invidious intent. You have to remember that this case was at the motion-to-dismiss stage, so the question is whether we stated a claim and whether we were entitled to discovery. In the district court, in addition to identifying the factors that Wickham and Rogers said were motion-to-dismiss, presented historical accounts as to why it was adopted. It was adopted solely for partisanship and with the understanding, as Thomas Jefferson stated, the minority, to use his words, would be entirely unrepresented. That should have been sufficient to get past a motion-to-dismiss. In addition, we should have been entitled to conduct discovery on why, today, Texas is maintaining winner-take-all. That is equally as relevant to the intent inquiry as why it was originally adopted. As the court in Rogers v. Lodge said, even an electoral system that was adopted originally for a neutral purpose can be maintained for a discriminatory one. And so you need to look at why it's being maintained. I want to also, in addition to the vote dilution law, we relied on Gravey-Sanders footnote 12. The district court did not address our arguments concerning footnote 12 of Gravey-Sanders, stating that the court in Williams cited Gravey-Sanders. It's true it did, but it did only for the uncontroversial proposition one person, one vote. The plaintiffs in Williams did not present any argument concerning footnote 12, and the court did not address it. Here is the two-step election addressed in Gravey-Sanders. Plaintiffs' votes are counted at the first step of an election and are worth nothing. They're counted only for the purpose of being discarded, and they have no influence in the final vote for president. If you get around the problem of the binding effect of Williams, you then have the problem of the discretion the Constitution gives the states in the manner they select their discretion, but they have to exercise it consistent with the Constitution, as the court in Williams and Rhodes explained. Well, I mean, you don't allege any invidious discrimination. We allege factors that are indicative of an electoral system that's consistent with an intent to discriminate, an intent for an electoral system to operate to minimize or cancel out the voting strength of minority voters. Here we have a situation where plaintiffs are assured zero representation every time in the electoral college, and that's really like maximally disproportional. There really is not a dilution case that's so absolute and extreme. It's really unprecedented when you look at dilution law. Is it a legitimate factor for a state to wish to maximize its clout in terms of the national election by having a greater differential, in this case, 38 to zero, rather than some fraction that would not give it that much influence? I'm asking, is that a legitimate factor among others, or is it per se illegitimate in the sense that, as you say, it might disadvantage an electoral minority? That's the precise rationale the state has advanced, and that reason really proves the problem. No matter what electoral system the state uses, it will have the same number of electors. What it really says is the state is interested in maximizing the power of the party in power, as opposed to the state as a whole, because no matter what, the state will have the same number of electors, because that's determined by the Constitution, not whether they're using winner-take-all. Ms. Mosley, your initial time has expired, but we've interrupted you with a lot of questions. You can have one more minute if there's anything else that you didn't get a chance to touch on. I just want to spend a few seconds on one person, one vote. In Williams, the court did not address whether winner-take-all satisfies the minimum requirements for non-arbitrary treatment of voters. The district court acknowledged that that is a relevant standard and without regard to invidious intent, but it never applied that standard to the allegations in our complaint. We surely, if anything, alleged a system that does not provide non-arbitrary and non-disparate treatment of voters. We allege that that winner-take-all treats minority voters differently. With respect to our First Amendment claim, the district court did not allege or address the core of our First Amendment claim, and that is the right to full and effective participation in the presidential election process. And then, for the compelling state interest, we've addressed what the state's identified interest is, but the motion to dismiss stage where we advanced a countervailing explanation for winner-take-all, the district court improperly weighed the two competing explanations when the motion to dismiss stage all reasonable inferences should have been drawn in plaintiff's favor. Thank you, Your Honor. You saved time for rebuttal. Thank you, Your Honor. May it please the Court. I'd like to start by making clear what claims the plaintiffs have and have not brought in their lawsuit. The plaintiffs have brought two claims that are before the Court here, a one-person, one-vote claim and a First and Fourteenth Amendment right of association claim. They have not brought any constitutional vote dilution claims. That is, they have not brought any claims alleging a discriminatory intent and a discriminatory effect. You can see this in R.O.A. 66, their complaint, and R.O.A. 215, which is their response to the one-person, one-vote argument into some kind of intentional partisan vote dilution claim, but they haven't pleaded that. The only vote dilution claim that they have ever advanced in this case is a race-based vote dilution claim under Section 2 of the Voting Rights Act. Now, they have abandoned that claim on appeal, but that claim couldn't have supported a partisan vote dilution theory anyway because the statutory text is limited to racial minority groups. And to the extent that they try now to develop a new partisan vote dilution claim on appeal, that claim is conclusively foreclosed by Rucho v. Common Cause, which rejects the notion that there is any constitutional claim for partisan vote dilution. If you look at Part 4A of Rucho v. Common Cause, it expressly rejects any such theory. So, to focus on their one-person, one-vote claim, that claim is foreclosed by binding Supreme Court precedent, the summary affirmance in Williams, because that case rejected the very same claim in the Plain of Spring here, which is a one-person, one-vote challenge to a state's winner-take-all allocation of electoral claim and affirm the district court on that issue. But even if it weren't foreclosed by binding Supreme Court precedent, the one-person, one-vote claim fails on its own terms because the nature of a one-person, one-vote claim is malapportionment or a failure to equalize population so that everybody gets approximately the same weight to their vote. So, the general rule, this is from Gray v. Sanders, is that once you pick the geographic unit for which a representative is to be chosen, that every person in that unit must have an equally weighted vote. But the court explained in Westbury v. Sanders a year later that that rule is followed automatically when representatives are chosen as a group on a statewide basis. And so, that resolves their claim here. Now, there has been some confusion in their theory about whether they're alleging that but for the one-person, one-vote claim, it makes no difference because a multi-member at-large election may be subject to challenges, but they're not one-person, one-vote challenges. By definition, that provides everyone an equal vote. Was there a time in Texas, if you know, when the electors' names were on the ballot? I don't. I think the answer is yes. I don't. I can't. It's okay if you're not sure. Yeah. I can't cite any authority. I know that there was a suggestion below that in Williams that Virginia electors' names were on the ballot. And we have explained in our briefing that doesn't make a difference either because it was clear on the Virginia ballot that you're not actually voting for electors. You're voting for a slate, which corresponds to your vote for president. So, I think it wouldn't change the analysis. The contrary authorities that they attempt to rely on are White v. Register and Bush v. Gore. White v. Register, they really confuse one-person, one-vote and race-based vote dilution claims. And in fact, White v. Register demonstrates that and it addresses them separately. This is at 763 of the Supreme Court's opinion. That's the one-person, one-vote claim that deals with the permissible deviation from equal population. And then at 765, the court moves on to the different claim about race-based vote dilution in multi-member districts. And so, the court found that those multi-member districts were used to invidiously cancel out or minimize the voting strength of racial groups. That's a race- based vote dilution claim, not a one-person, one-vote claim. And the courts holding there did not purport to modify the one-person, one-vote doctrine. Bush v. Gore is, to put it simply, it's a case of arbitrary treatment. The equal protection problem in Bush v. Gore was that the question, there was a question of voters' intent based on the ballot and the problem was that voters or election administrators in different precincts and sometimes even different administrators in the same precinct were applying different standards to determine the intent of the voter. And so, the Supreme Court held, limited to these circumstances, that's arbitrary and it doesn't modify the doctrine of one-person, one-vote. If I could move on to the First Amendment claim, the district court correctly dismissed this claim and it held that the plaintiffs allege no cognizable burden on the rights of assembly, expression, or association. That is correct and the court should affirm because the plaintiffs don't allege that their candidates are excluded from the ballot, they don't allege any impediment to casting a vote, any denial of equal access to registration, or that their ballots are not counted. In fact, their complaint alleges just the opposite. They admit their ballots are counted equally. They don't, they don't allege that they are subject to any harm by reason of their views. The only harm they allege is that they don't get a majority of the votes and when they don't get a majority, they don't get any representation. But the effect of a majoritarian system is not a burden on anyone's First or Fourteenth Amendment rights. The Supreme Court's been clear that the Constitution doesn't guarantee that speech will persuade or that advocacy will be affected, be effective, and the Constitution certainly doesn't guarantee that a political party's votes will translate to political power in proportion to their share of the statewide election. To the extent there was any doubt about that, and I don't think there was, it was eliminated in Russo v. Common Cause. And so even if there were a cognizable burden here, it couldn't outweigh the state's interest in maximizing its influence as a state in the national election. And it's important to be clear that's not a partisan interest. That's a party-neutral interest in having the state's majority have the maximum impact regardless of which party wins. So I think the big picture here is that the winner-take-all system does not deny one person one vote or violate any expressional or associational rights of Democrats or third parties in Texas any more than it imposes a burden on Republicans or third parties in California. And the big theoretical problem with the plaintiff's theory of injury here is that it presumes an electoral system that doesn't exist, which is a national election for president. Texas has provided a system where the voters in Texas vote for the president in Texas. That's the only presidential election that happens in Texas. The fact that they don't have an individual equally weighted vote in the national election for president is not a constitutional injury because there is no national election for president and no person has a constitutional right to an individual equally weighted vote in the national election. Unless there are further questions, we would respectfully urge that the Court affirm the District Court. Thank you, Mr. Kroger. Counselor, for Rivella? I'd first like to address the State's argument with respect to Rucho. That addressed single-member districts, which are neutral on their face, and whether there's a standard, a judicial standard for reviewing them. Unlike under the Elector Clause, which applies here, under the Elections Clause, Congress has oversight over how congressional districts are drawn. Here, that's not the case. The only branch of the government that can review this is the Court, and that sets that apart for Rucho. The State's argument would overturn some significant precedents, such as McPherson v. Blocker, which said the Court can review on an equal protection basis how states allocate their electors. There, it just found that it was constitutional how it was done. It was done by single-member districts. The State cited Westbury. It's important to remember that Westbury was not decided under the 14th Amendment. In fact, the Court specifically had a footnote saying, you're deciding it only under the Elections Clause. With respect to the State's argument that we did not allege a dilution claim, we, in, for instance, paragraph 43 of our complaint, we say that under this system, all of Texas's 38 electors are members of the political party that nominated the candidate that wins the popular vote. The consequence of this system is to give no effect to the votes of the citizens who voted for a losing candidate. That's exactly the standard for dilution, to a system that's conceived or operated to minimize or cancel out the voting strength of minority voters. With respect to the State's argument that plaintiffs' votes were counted, as the Supreme Court said in Reynolds v. Sims, the right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government, and the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote, just as effectively as by wholly prohibiting the franchise of the franchise. In addition, the State said that our claims were not justiciable because they involve a political party, but that's inconsistent also with Supreme Court precedent. In Whitcomb v. Chavez, for instance, at pages 143 to 44, the Supreme Court said, but we have deemed the validity of multi-member districts justiciable, recognizing also that they may be subject to challenge where the circumstances of a particular case may operate to minimize or cancel out the voting strength of racial or political elements of the voting population. I think it's also just very important to remember that this was a motion to dismiss, so the question is whether we stated a claim, and the allegations in this complaint, it clearly do, and it was error for, at a minimum, the District Court to dismiss with prejudice. Thank you, Your Honor. All right, thank you, Ms. Mollicer. Your case is under submission. Next case.